**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2737
_____

IRIS CHIN,
                              Appellant

v.

RUTGERS, The State University of New Jersey;
RUTGERS NEW JERSEY MEDICAL SCHOOL;
JAMES M. HILL, Ph. D., individually and in his official capacity;
ABC CORPORATION (1-10);
JOHN DOES (1-10);
JANE DOES (1-10)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-01332)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 31, 2017
_____

Before: VANASKIE, KRAUSE, and RESTREPO, *Circuit Judges*.

(Opinion Filed: June 22, 2017)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Iris Chin appeals the decision of the District Court granting summary judgment to Rutgers University in Chin's suit for discrimination under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the New Jersey Law Against Discrimination ("NJLAD").  We will affirm.

**I**

As we write for the benefit of the parties, we set out only the facts necessary for the discussion that follows.  Plaintiff Iris Chin matriculated at Defendant Rutgers in the fall of 2004.[1]  Medical curricula at Rutgers and other schools are divided into two years of didactic education in a classroom or lecture setting, and two subsequent years of clinical education where students rotate through a series of clerkships in particular subspecialties (e.g. obstetrics/gynecology or family medicine).  To advance past the didactic stage into the clinical stage, students must pass the U.S. Medical Licensing Exam ("USMLE") Step-1.  Although the USMLE allows students six attempts to pass, Rutgers' policy makes students who do not pass on the second attempt subject to dismissal.  Rutgers also requires that all students (1) finish all clerkships and pass the two parts of USMLE's Step-2 exam—Clinical Skills ("CS") and Clinical Knowledge ("CK")—within

---

[1] Prior to a reorganization of public higher education entities in New Jersey, Rutgers New Jersey Medical School was known as The University of Medicine and Dentistry of New Jersey.  We refer to the school as Rutgers throughout this opinion.

three years; (2) pass both parts of Step-2 by the second attempt; and (3) graduate within six years total, not counting cumulative leaves of absence ("LOA") of up to two years.

During her first year, Chin suffered from a disability and performed poorly in school. The school ultimately granted her a four-month LOA, and allowed her to start school again, as a first-year student, in the fall of 2005. At the end of her second year of curriculum in 2007, Chin requested a six-week extension prior to her scheduled Step-1 test date, which the school granted. Instead of sitting for the test at the end of the extension, Chin sought and was granted a one-year LOA to prepare for Step-1. Upon returning from that LOA in 2008, Chin requested an additional extension before taking Step-1. The Committee on Student Affairs ("CSA"), composed primarily of faculty, voted to deny that additional request. The Dean of the medical school, exercising his authority under Rutgers' policies, overrode the CSA and granted Chin the additional extension. When Chin sat for Step-1, she failed. Chin then requested another four-month LOA to prepare for her second attempt at Step-1 (scheduled for June 2009), which the school granted.

At the end of the LOA, Chin requested another extension, which was denied by the CSA, but again granted by the Dean. When she took Step-1 a second time, Chin failed again. At this point, Chin had to request a waiver of the school's policy of dismissing students who fail two attempts at Step-1. After the CSA denied her request, the Dean again overrode the CSA to waive the policy and granted an eight-week extension so Chin could prepare for her third attempt. The Dean also helped Chin obtain

3

tutoring. On her third attempt, Chin passed Step-1, and proceeded to the clinical phase of her education.

In January 2011, the school's degree audit showed that Chin was not on pace to meet the three-year clinical completion policy, or the six-year graduation policy. The school granted Chin a short waiver of the six-year graduation policy, with explicit instructions that she meet all other requirements, including the three-year clinical policy. On Chin's first attempt at the Step-2 exam, she failed both the CS and CK components. Chin asked for an extension before taking Step-2 again, which was denied. On her second attempt, in March 2012, Chin sat only for the CS assessment of Step-2, which she failed. She did not sit for three re-scheduled dates to re-take the CK part, and failed to meet the April deadline by which she needed to pass both parts of Step-2 to fulfill the school's requirements.

In May, Chin requested a waiver of the three-year clinical completion policy, an additional extension of the six-year graduation policy, and a waiver of the Step-2 two-attempt policy. When the school denied the request, the Dean's office assisted her in appealing to the CSA, to which she testified at a full hearing. (By Chin's accounting, an associate Dean met with Chin "dozens" of times during her years at the school. App. 145.) When the CSA denied her appeal, the Dean's office allowed her to submit additional material for its consideration. In considering that material, the Dean's office also followed up with her medical provider, who could not offer any assurance that her condition would stabilize during the term of the requested accommodation or for the

4

foreseeable future. The Dean decided to uphold, rather than override, the CSA's decision

not to waive the policies and to dismiss her instead.

Chin sued Rutgers, seeking both compensatory damages and equitable relief for

violations of the ADA, the RA, and the NJLAD. The District Court granted Rutgers'

motion for summary judgment on the ground that Chin had not met one of the three

required elements to make out her ADA violation: that she did not show that she was

"otherwise qualified," with or without accommodations, for the medical program.

## II[2]

To establish a violation under the ADA or RA by an entity receiving federal funds,

Chin had to show (1) that she has a disability; (2) that she is otherwise qualified to

participate in the medical school program with or without reasonable accommodations;

and (3) that she was denied the benefits of the program on the basis of her disability.[3]

*See Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999). Chin

appeals the District Court findings that she was not otherwise qualified for Rutgers'

medical program; that her requested accommodations were not reasonable; and that

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a District Court's grant of summary judgment is plenary. *NAACP v. City of Phila.*, 834 F.3d 435, 440 (3d Cir. 2016). On review, we apply the same standard as the District Court. *Id.* "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[3] Title II of the ADA and the RA are to be interpreted consistently, and those principles "apply equally to . . . NJLAD claims." *Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001).

granting the accommodations requested would have amounted to a fundamental alteration

of Rutgers' program. Because we affirm on the grounds that Chin was not otherwise

qualified, we need not address the other issues. *Id.* at 1047.[4]

Although courts have the ultimate responsibility to determine whether a student is

qualified with or without reasonable accommodations, courts "show great respect for the

faculty's professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225

(1985). In assessing a school's judgment as to a student's qualifications for an academic

program, courts consider two aspects of the decision: first, did "the academic

institution . . . seek suitable means of reasonably accommodating" the disabled student

and submit a factual record of undertaking that obligation conscientiously, and second,

did that process lead the university to reach a "rationally justifiable conclusion." *Wynne*,

932 F.2d at 25-26. Courts may decline to respect a school's judgment when the factual

record shows that the school did not conscientiously consider "all pertinent and

appropriate information in making its decision." *Wong v. Regents of Univ. of Calif.*, 192

F.3d 807, 823 (9th Cir. 1999).

In *Wong*, the Ninth Circuit rejected the school's determination because it regarded

the school's stated reasoning for denying the proposed accommodations as "after-the-fact

---

[4] Had Chin established that she was otherwise qualified with or without some
accommodations, the school could subsequently demonstrate that the accommodations in
question would "fundamentally alter the nature of the [] program." 28 C.F.R. §
35.130(b)(7). (Courts have treated this standard like a burden-shifting framework. *Zukle*,
166 F.3d at 1047.) In the academic context, if rejected accommodations "would result
either in lowering academic standards or requiring substantial program alteration, the
court could rule as a matter of law that the institution had met its duty of seeking
reasonable accommodation." *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 26 (1st Cir.
1991) (en banc).

justification" that did not show conscientiousness at all. *Id*. at 819. There, the school had declined even to discuss the student's proposed accommodations with any professionals, whether doctors or learning specialists. *Id*. By contrast, in *Zukle*, the Ninth Circuit deferred to the university's judgment as to the student's qualifications because the school had offered nearly every requested accommodation, and only dismissed her after a thorough consideration of her situation. *Zukle*, 166 F.3d at 1044.

Here, the District Court reasonably respected Rutgers' determination that Chin was not otherwise qualified to continue at the school. The school worked extensively over a period of nearly eight years to accommodate Chin. In addition to according her the full two allowable years of LOA, the school granted her five separate extensions of Step testing deadlines. Chin met with the Dean's office "dozens" of times about her academic performance and mental health. App. 145. The Dean's office overrode several CSA decisions to decline extensions to or to dismiss Chin; offered her tutoring in advance of both Step-1 and Step-2; proactively helped her improve her case against dismissal to the CSA; and independently sought her medical provider's opinion as to whether her final proposed accommodation would likely help her complete the program requirements given her medical condition before affirming her dismissal.[5] Rutgers

---

[5] Chin claimed in her deposition, and again on appeal, that an assistant dean told her at one point that she could not "perform the essential functions of a doctor because" of her condition. App. 226; Appellant's Br. at 16. In the context of all the Dean's office's actions during her time at Rutgers, that single disputed statement, even construed in the light most favorable to Chin, does not create a genuine dispute of material fact as to the conscientiousness with which the Dean's office tried to accommodate her.

reached a rationally justifiable conclusion about Chin's qualifications at the end of a conscientious process to fulfill its obligations under the law.

## III

For the foregoing reasons, we will affirm the judgment of the District Court.